UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. RIVERA-RIVERA,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No. 10-1308 (JAF)<br><br>(Crim. No. 05-033) |

**OPINION AND ORDER**

Petitioner, José A. Rivera-Rivera, brings this pro-se petition under 28 U.S.C. § 2255 for relief from sentencing by a federal court, alleging that the sentence was imposed in violation of his constitutional rights. (Docket No. 3.) The Government opposes (Docket No. 11), and Petitioner replies (Docket No. 14).

**I.**

**Factual and Procedural Summary**

We draw the following narrative from the record of Petitioner's criminal trial (Crim. No. 05-033) and Petitioner's motion, the Government's response, and Petitioner's reply (Docket Nos. 3; 11; 14). On April 21, 2005, Petitioner was convicted of obstructing interstate commerce by robbery, in violation of 18 U.S.C. § 1951 ("Hobbs Act"); knowingly carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and being a convicted felon in possession of a firearm in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g).

Civil No. 10-1308 (JAF)                                                                                                                  -2-

At trial, evidence was presented that Petitioner and codefendant Ramón Sánchez-Rosado entered the Muñíz Gallery shopping mall in Caguas, Puerto Rico, before its official opening time on the morning of October 11, 2004. They approached the mall's manager, Carmelo Fonseca, as he was leaving the electronic lottery and gaming parlor, brandished their pistols, and threatened to shoot Fonseca if he did not cooperate with them. Petitioner and Sánchez-Rosado ordered Fonseca to take them upstairs to the lottery's office and open its safe. After binding Fonseca's arms and legs, Petitioner and Sánchez-Rosado filled a shopping bag with a cash box containing $8,770, a gun found in the desk of the lottery office, and a photo ID of the lottery owner "in case they had to make any home visit." (Crim. No. 05-033, Docket No. 117 at 83.)

Unbeknownst to Petitioner and Sánchez-Rosado, their encounter with Fonseca had been witnessed by an optometrist, Dr. Johanna Loyola, as she ate an early breakfast in her office in the mall. Loyola called 911 and also asked a maintenance worker who had just arrived at the building to go find help. The maintenance worker, in turn, found police officer Juan Soto outside the mall. Soto entered the mall, locked the back door that Petitioner and Sánchez-Rosado had entered through, and padlocked the front entrance while he waited outside for backup to arrive. He was soon joined by several more police officers, including Eliseo Martínez. As Soto and Martínez removed the padlock from the front door and entered the mall, they saw Petitioner and Sánchez-Rosado near the lottery office carrying a shopping bag. Disregarding the officers' orders to stop, Petitioner and Sánchez-Rosado tried to leave through the back door only to find that it had been locked. They turned around and tried to open various doors in search of an escape until finding the unlocked door of the men's bathroom. Before entering the bathroom, Petitioner and Sánchez-Rosado lifted their shirts, and Soto observed

pistol butts sticking out of their waistbands. A few minutes later, Petitioner and Sánchez-Rosado walked out of the bathroom and were arrested by Soto and Martínez. Soto found the shopping bag containing the cash box and pistol in the bathroom trash can. He found two other pistols hidden in the bathroom's paper towel dispenser.

Prior to trial, the Government and defense counsel entered into five joint stipulations. (Crim. No. 05-033, Docket No. 64.) The stipulations established the chain of custody for the firearms seized at the scene of the crime, results of ballistics tests on the firearms, travel of the firearms through interstate commerce, purchase of the lottery machines from a company in Rhode Island, and inconclusive results of fingerprints at the scene of the crime. (Id.)

At trial, the Government called Fonseca to testify. Fonseca identified Petitioner and Sánchez-Rosado as the men who had held him at gunpoint and robbed the lottery office. Defense counsel attempted to suppress this identification on the grounds of Fonseca's impermissibly suggestive pretrial encounters with the defendants, but we denied this motion. We did agree, however, to give the following instruction to the jury on identification procedures:

> In any criminal case, the government must prove . . . the identity of the persons who committed the alleged crime[;] . . . you must first decide whether that witness or any other witness is telling the truth. Then if you believe that the witness was truthful, you must still decide how accurate the identification was.
> Again, I suggest that you ask yourself a number of questions: Did the witness have an adequate opportunity at the time of the crime to observe the person in question? What was the length of time that the person or the witness had to observe the persons involved? What were the prevailing conditions at the time in terms of visibility or distance and the like? Had the witnesses known or observed the person at earlier times?

Civil No. 10-1308 (JAF) -4-

> You may also consider the circumstances surrounding any lack of identification, including, for example, the manner in which the defendant was presented to the witnesses for identification, and the length of time that elapsed between the incident in question and the witness'[s] identification of the defendant.
> After examining all the testimony and evidence in the case, if you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find the defendant not guilty.

(Crim. No. 05-033, Docket No. 118 at 260–61.)

We also instructed the jury as to the interstate commerce element of the Hobbs Act violation:

> It is not necessary for you to find that the defendants knew or intended that their actions would affect commerce. It is only necessary that the natural consequences of the acts committed by the defendants as charged in the indictment would affect commerce in any way or in any degree.
> The term "commerce" means commerce between any point in a state and any points outside the United States, including Puerto Rico.

(Id. at 264–65.)

Petitioner was convicted and sentenced to 415 months' imprisonment. He and Sánchez-Rosado appealed their convictions to the First Circuit, challenging Fonseca's identification, sufficiency of the evidence for the Hobbs Act claim, and our jury instruction on the Hobbs Act. That appeal was denied. United States v. Rivera-Rivera, 555 F.3d 277 (1st Cir. 2009).

## II.

## **Standard for Relief Under 28 U.S.C. § 2255**

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court. See 28 U.S.C. § 2255. A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States." Id.

The petitioner is entitled to an evidentiary hearing unless the "allegations, even if true, do not entitle him to relief, or . . . the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting David v. United States, 134 F.3d 470, 477 (1st Cir. 1998)) (internal quotation marks omitted); see also § 2255(b). In general, a petitioner cannot be granted relief on a claim that was not raised at trial or on direct appeal, unless he can demonstrate both cause and actual prejudice for his procedural default. See United States v. Frady, 456 U.S. 152, 167 (1982). Claims of ineffective assistance of counsel, however, are exceptions to this rule. See Massaro v. United States, 538 U.S. 500 (2003) (holding that failure to raise ineffective assistance of counsel claim on direct appeal does not bar subsequent § 2255 review).

**III.**

**Analysis**

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Petitioner cites six ways in which his trial counsel was ineffective: (1) failure to suppress evidence; (2) failure to challenge sufficiency of the evidence for the interstate commerce element of a Hobbs Act violation; (3) failure to object to jury instructions on witness identification; (4) failure to object to jury instructions on the interstate commerce prong; (5) failure to make an opening statement; and (6) entry of stipulations.

The success of a claim of ineffective assistance of counsel under § 2255 depends on a petitioner's showing both a deficient performance by his trial counsel and a resulting prejudice. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). Deficient performance is present where the trial counsel's representation "fell below an objective standard of reasonableness," a standard that is informed by "prevailing professional norms." Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). To succeed on a claim of ineffective assistance of counsel, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Choices made by counsel that could be considered part of a reasonable trial strategy rarely amount to

deficient performance. See id. at 690. Counsel's decision not to pursue "futile tactics" will not be considered deficient performance. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999); see also Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (stating that failure to raise meritless claims is not ineffective assistance of counsel). Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

### A. Suppression of Evidence

Petitioner claims his attorney did not follow an instruction to move to suppress evidence. The motion does not specify what evidence Petitioner instructed his attorney to suppress, nor does it offer a reason for suppression. In his reply to the Government, Petitioner states that the firearms, cellular phones, clothing, shopping bag, and gloves should have been suppressed. Petitioner reasons that suppression was warranted because of a lack of fingerprints and DNA evidence. He makes an additional argument for the suppression of the firearms that we briefly summarize: Police officers are trained to shoot suspects who carry firearms. Officer Soto did not shoot Petitioner. Therefore, Petitioner was not carrying a firearm.

Counsel's performance in this instance was not deficient and it did not prejudice Petitioner. A motion to suppress on these grounds would have been a "futile tactic" that counsel did not need to pursue. See Vieux, 184 F.3d at 64. There was no basis to suppress this evidence under Fourth Amendment jurisprudence, nor was there reason to believe this evidence was otherwise inadmissible under the Federal Rules of Evidence. The items Petitioner believes

should have been suppressed were not on his person at the time of his arrest, but overwhelming circumstantial evidence was presented to tie him to them, regardless of a lack of DNA or fingerprint evidence.

**B.  Sufficiency of the Evidence**

Petitioner next argues that his counsel was ineffective by not raising in his Rule 29 motion the sufficiency of the evidence of a link to interstate commerce. The First Circuit previously addressed the nexus to interstate commerce in this case. Rivera-Rivera, 555 F.3d at 286–89. The court noted testimony that the lottery machines affected by this robbery were interstate purchases, that associated equipment was also bought in interstate commerce, and that at least some of the lottery's customers were tourists from various states. Id. On this basis, the First Circuit stated, "Even if we were reviewing the appellants' sufficiency claim de novo, which we are not, we would be hard pressed to find the evidence regarding the interstate commerce nexus insufficient to support the verdict." Id. at 287. We agree, and because there was sufficient evidence to prove a nexus to interstate commerce, we cannot find counsel deficient in his choice not to raise a futile sufficiency argument.

**C.  Jury Instruction on Witness Identification**

Petitioner argues that counsel should have objected to the special jury instruction concerning identification procedures. He states that the jury instruction was

> [n]ot as specific as the first part of the instructions concerning this issue and never requested the court to instruct the jury on the lack of my critical feature [sic], how general was the description if there

>           was any, the liability of the witness to match the defendant to the
>           items used against the defendant in the testimony of the witness,
>           nor did [counsel] request the court to instruct the jury in what is a
>           suggestive identification.

(Docket No. 14 at 7.)

We find no error in our instruction that would convince us that counsel's decision not to object is an example of deficient performance. The instruction tracks the language of a model instruction on witness identification from a widely used treatise. See 1A Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 14:11 (6th ed. 2008). While counsel could have objected to this instruction and requested one with more detail, see, e.g., id. § 14:10, his choice against such an objection falls entirely within the broad bounds of reasonable trial strategy.

### D.     Jury Instruction on Interstate Commerce

Petitioner also contends that counsel should have objected to the instruction on the crime's nexus to interstate commerce. "[Counsel] did not request the court to instruct the jury to take into consideration the regularity of the victim's business in interstate commerce, and the extent of the envolvement [sic] of the business in tourism." (Docket No. 14 at 9.)

Counsel's choice not to request a more detailed jury instruction on this issue, or to object to the instruction in its final form, is not the sort of egregious error, if it is indeed an error, that would fall outside the "wide range of reasonable professional assistance" guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 689. While he may disagree with his counsel's

Civil No. 10-1308 (JAF)                                                                                          -10-

choice, Petitioner is not entitled to a perfect defense, or even a successful one; the Sixth Amendment guarantees him only an effective defense. See Peralta, 597 F.3d at 79. In this instance, we find counsel's performance objectively reasonable and, thus, effective.

### E. Waiver of Opening Statement

In his motion, Petitioner mentions in passing that counsel waived an opening statement. In his reply to the Government's opposition, however, Petitioner confusingly incorporates this into his argument that counsel was deficient in failing to lodge an objection to the jury instruction on the robbery's nexus to interstate commerce. (Docket No. 14 at 9.)

To the extent we view this as a separate claim of ineffective assistance of counsel, we find that the choice to forgo an opening statement falls under the presumption of sound trial strategy. See Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (noting that waiver of opening statement is a common strategy and, without more, cannot constitute ineffective assistance of counsel), cert. denied, 531 U.S. 938 (2000); Huffington v. Nuth, 140 F.3d 572, 583 (4th Cir. 1998) ("[A] decision [to waive opening statement] is essentially tactical in nature, and not objectively unreasonable."); United States v. Mealy, 851 F.2d 890, 908 (7th Cir. 1988) ("[T]he mere fact that counsel did not make an opening statement is not sufficient for a defendant to prevail on a claim of ineffective assistance of counsel."). Furthermore, given the weight of the evidence against Petitioner, we fail to see how his defense was prejudiced by the lack of an opening statement.

**F.     Stipulations**

Finally, Petitioner argues that counsel's choice to enter into stipulations regarding the introduction of the guns into evidence was ineffective assistance. (Docket No. 14 at 10.) He claims that "no witnesses mentioned the defendant with any of the firearms[,] . . . . [n]one of the reports of the A.T.F. link the defendant," and that one of the reports states that his fingerprints were not found on the guns. (Id.) The stipulations Petitioner refers to were made in order to establish the chain of custody and the results of fingerprints and ballistics tests. (Crim. No. 05-033, Docket No. 64.) Petitioner offers no basis for his counsel to have challenged the admission of these reports into evidence, and we find none in the record before us.

## IV.

## Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). We see no way in which a reasonable jurist could find

Civil No. 10-1308 (JAF)                                                                                                         -12-

our assessment of Petitioner's constitutional claims debatable or wrong.  Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

## V.

## **Conclusion**

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 3). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief from this court.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 5th day of July, 2011.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
United States District Judge